UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------

VERONIKA MEDNIK,

                         Plaintiff,

         v.

SPECIALIZED LOAN SERVICING, LLC,

                        Defendant.
--------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-427 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Veronika Mednik commenced the above-captioned action against Defendant

Specialized Loan Servicing LLC ("SLS"), among others,[1] on January 26, 2020, alleging that SLS

violated section 1681s-2(b) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the

"FCRA") by failing to investigate and correct disputed information relating to Plaintiff's

mortgage loan in reports to the credit bureaus.  (Compl. ¶¶ 45–50, Docket Entry No. 1.)  SLS

moves to dismiss the claim against it for lack of personal jurisdiction, improper venue, and

failure to state a claim pursuant to Rules 12(b)(2), (b)(3), and (b)(6) of the Federal Rules of Civil

Procedure, respectively, and Plaintiff opposes the motion.[2]

---

[1]  The Complaint also names Nationstar Mortgage LLC, Trans Union LLC, and Equifax
Information Services LLC as defendants, but these entities are no longer parties to the case.
(Stipulation of Dismissal with Nationstar Mortgage LLC, Docket Entry No. 34; Stipulation of
Dismissal with Trans Union LLC, Docket Entry No. 43; Stipulation of Dismissal with Equifax
Information Services LLC, Docket Entry No. 46.)

[2]  (Def.'s Mot. to Dismiss, Docket Entry No. 40; Def.'s Mem. in Supp. of Def.'s Mot.
("Def.'s Mem."), Docket Entry No. 40-1; Def.'s Reply Mem. in Supp. of Def.'s Mot. ("Def.'s
Reply"), Docket Entry No. 41; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 44.)

For the reasons set forth below, the Court grants SLS's motion and dismisses the

Complaint for lack of personal jurisdiction but grants Plaintiff sixty days to file an amended

complaint.

## I.   Background

Plaintiff is a New York resident and "consumer" as defined by the FCRA.[3]  (Compl.

¶ 11.)  Defendant SLS is a mortgage loan servicing company and "furnisher" as defined by the

FCRA.  (*Id.* ¶ 15.)  SLS has its principal place of business in Colorado and is registered to do

business in New York.[4]  (*Id.*)

In 2006, Plaintiff obtained a mortgage loan and used it to purchase a property in

Pennsylvania.  (Decl. of Veronika Mednik ("Pl.'s Aff.") ¶¶ 2–3, annexed to Pl.'s Opp'n as Ex. 1,

Docket Entry 44-1.)  In 2016, Plaintiff defaulted on the loan and Nationstar Mortgage LLC

("Nationstar") commenced a mortgage foreclosure action against her in Pennsylvania.

(Foreclosure Complaint, attached to Decl. of Alan F. Kaufman ("Kaufman Decl.") as Ex. A,

Docket Entry No. 40-2, at 4.)  In October of 2017, the court in the Pennsylvania action entered a

Judgment in Mortgage Foreclosure in favor of Nationstar and against Plaintiff.  (J. in Mortgage

Foreclosure, annexed to Kaufman Decl. as Ex. B, Docket Entry No. 40-2, at 75.)  SLS was later

assigned Nationstar's rights to service the loan and began servicing the loan on December 18,

---

[3]  The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.  *See Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 194 (E.D.N.Y. 2018) ("Where . . . personal jurisdiction is challenged by way of a motion pursuant to [Rule 12(b)(2)], the [c]ourt must 'assume[] the truth of the plaintiff's factual allegations,'" (third alteration in original) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013))).

[4]  Plaintiff does not allege where SLS is incorporated, (Compl. ¶ 15), but SLS appears to be incorporated in Delaware, (Colo. Secretary of State Summ. on SLS, annexed to Kaufman Decl. as Ex. G, Docket Entry No. 40-2, at 111; *see also* Def.'s Mem. 9).

2017.  (Notice of Servicing Transfer, annexed to Kaufman Decl. as Ex. C, Docket Entry 40-2, at 78.)  In March of 2018, Nationstar substituted SLS "as the real party/[p]laintiff in interest in [the foreclosure] action and the holder of the Note and Mortgage," making SLS the judgment creditor.  (Praecipe to Mark the J. to the Use of SLS, annexed to Kaufman Decl. as Ex. D, Docket Entry No. 40-2, at 91.)  In September of 2018, the property was sold at foreclosure sale.  (Proposed Schedule of Distribution, annexed to Kaufman Decl. as Ex. E, Docket Entry 40-2, at 94.)

As the loan servicer, SLS was responsible for collecting payments from Plaintiff, (Notice of Servicing Transfer 78),[5] and furnishing information regarding the loan to the national credit bureaus, including TransUnion, LLC, (*see* Compl. ¶ 26).  The loan account was eventually closed, leaving a balance of $0.  (*Id.* ¶ 5.)  However, SLS continued to report that payments on the account were "120 days past due."  (*Id.* ¶ 27.)  This reporting conveyed to prospective lenders that Plaintiff was currently delinquent on her payments, and it adversely affected her creditworthiness.  (*Id.* ¶ 28.)

On October 27, 2019, Plaintiff sent a letter to TransUnion disputing the accuracy of the reporting of the SLS account and TransUnion notified SLS about the dispute.  (*Id.* ¶¶ 28–29.)  Although the FCRA requires furnishers to mark disputed accounts as such, investigate the dispute, and remove any misleading information within thirty to forty-five days of receiving notice of a dispute, (*id.* ¶¶ 6, 19), SLS failed to complete these tasks, (*id.* ¶¶ 29–30.)  Due to

---

[5]  The Notice of Servicing Transfer sent to Plaintiff in Pennsylvania instructs Plaintiff to send all payments due on her loan to SLS at its Atlanta, Georgia, mailing address and provides contact information for its Colorado headquarters.  (Notice of Servicing Transfer 78.)  The letterhead on the Notice contains SLS's Colorado address.  (*Id.*)

3

SLS's failure to complete these tasks, Plaintiff lost credit opportunities, suffered harm to her credit reputation and credit score, and suffered emotional distress. (*Id.* ¶ 49.)

## II. Discussion

### a. Standard of review

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Ent.*, *Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). The showing a plaintiff must make to meet that burden is governed by a "sliding scale," which "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 742 (2d Cir. 2020) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)); *see also Holmes v. Apple*, 797 F. App'x 557, 559 (2d Cir. 2019) ("A plaintiff has the burden of establishing personal jurisdiction over an entity against which it seeks to bring suit, and to survive a motion to dismiss for lack of such jurisdiction, 'a plaintiff must make a *prima facie* showing that jurisdiction exists.'" (quoting *Penguin Grp. (USA) Inc.*, 609 F.3d at 34–35)); *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) (same). Prior to discovery, a plaintiff need only plead "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Holmes*, 797 F. App'x at 559

(quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also Dix v. Peters*, 802 F. App'x 25, 27 (2d Cir. 2020) ("Where the district court grants a Rule 12(b)(2) motion without an evidentiary hearing, we credit the plaintiff's averment of jurisdictional facts as true." (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)); *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A *prima facie* case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998))). After discovery, the plaintiff's "*prima facie* showing must be factually supported." *Dorchester Fin. Sec., Inc.*, 722 F.3d at 85 (quoting *Ball*, 902 F.2d at 197). "Conclusory allegations based only on information and belief are not sufficient" to provide such factual support. *McGlone v. Thermotex, Inc.*, 740 F. Supp. 2d 381, 383 (E.D.N.Y. 2010) (citing *Jazini*, 148 F.3d at 183–84).

The court must "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL* (*Licci IV*), 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé*, 616 F.3d at 163); *see also Grundstein v. Eide*, 598 F. App'x 45, 46 (2d Cir. 2015) (citing *DiStefano*, 286 F.3d at 84). However, the court need not "accept as true a legal conclusion couched as a factual allegation." *O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Jazini*, 148 F.3d at 185).

> **b.  Plaintiff has not made a prima facie showing that the Court has personal jurisdiction over Defendant**

Defendant argues that the Court must dismiss the action for lack of personal jurisdiction because there is no basis for the Court to find general or specific jurisdiction over SLS other than the fact that Plaintiff resides in New York, which is insufficient. (Def.'s Mem. 8–11.) In

addition, Defendant argues that the Court should deny Plaintiff's request for jurisdictional discovery because she has failed to state a prima facie case for jurisdiction over SLS, any purported discovery is already in her possession, and none of the relevant facts are in dispute. (Def.'s Reply 6.)

Plaintiff argues that the Court has specific jurisdiction over SLS under sections 302(a)(1) and (a)(3) of New York's long-arm statute and that the exercise of personal jurisdiction comports with due process.[6]  (Pl.'s Opp'n 8–11.)  In addition, Plaintiff argues that "if the Court is not inclined to exercise personal jurisdiction, it should permit limited jurisdictional discovery into SLS's New York contacts to avoid undue prejudice."  (*Id.* at 11–13.)  Finally, Plaintiff requests leave to amend "[i]f . . . the Court finds the Complaint lacking in any way."  (*Id.* at 13–14.)

"There are two types of personal jurisdiction: specific and general."  *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 225 (2d Cir. 2014).  General jurisdiction permits a court to exercise personal jurisdiction over a defendant regardless of whether the underlying claim has a connection to the forum.  *Id.* ("A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation — even those entirely unrelated to the defendant's contacts with the state.")  Specific jurisdiction requires a connection between the forum exercising jurisdiction over the defendant and the underlying controversy that gave rise to the claim.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S.

---

[6]  Plaintiff notes that she "proceeds only under the 'specific jurisdiction' prong."  (Pl.'s Mem. 9 n.5; *cf.* Def.'s Mem. 9 (arguing that general jurisdiction does not exist).)

915, 919 (2011))).  Under New York law, courts exercise specific jurisdiction pursuant to N.Y.
C.P.L.R. § 302 and general jurisdiction pursuant to N.Y. C.P.L.R. § 301.

Section 302(a) permits courts "to exercise personal jurisdiction over [a] non-domiciliary"
where the "cause of action aris[es] from any of the acts enumerated in the [statute]."  N.Y.
C.P.L.R. § 302(a).  In addition, even if a plaintiff can establish jurisdiction under New York law,
the court must also determine whether the "exercise of personal jurisdiction over a foreign
defendant comports with the due process protections established under the United States
Constitution."  *Licci IV*, 732 F.3d at 168 (first citing *Best Van Lines, Inc. v. Walker*, 490 F.3d
239, 242 (2d Cir. 2007); and then citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### i.    The Court lacks personal jurisdiction over SLS under section 302(a)(1)

SLS argues that "Plaintiff cannot meet [her] burden . . . under [section] 302(a)(1)"
because "the Complaint is devoid of any reference to SLS's purported contacts with New York
in relation to the relevant transaction, other than to say that Plaintiff lives here."  (Def.'s Mem.
10–11.)  In support, SLS asserts that Plaintiff's claim "arises out of SLS's business activity in
Pennsylvania[,] where the [s]ubject [p]roperty is located."  (Def.'s Reply 3.)

Plaintiff argues that specific jurisdiction exists under N.Y. C.P.L.R. § 302(a)(1) because
"SLS had extensive suit-related contacts with New York and Plaintiff's claims arise out of those
contacts."  (Pl.'s Opp'n 9.)  In support, Plaintiff argues that "SLS serviced a New York
consumer's mortgage loan," "furnished inaccurate credit information related to that loan," and
"failed to properly respond to a dispute generated in, and sent from, New York."  (*Id.*)  Relying
on *Minner v. Navient Corp.*, No. 18-CV-1086, 2020 WL 906628, at *5 (W.D.N.Y. Feb. 25,
2020), Plaintiff argues that this conduct "constitutes [a] 'transaction of business' under [section]
302(a)(1)" and thus "gives rise to personal jurisdiction in New York."  (*Id.*)  In addition, Plaintiff

contends that she has "received communications from [SLS] concerning the loan-servicing of the [l]oan" at her New York residence.  (Pl.'s Aff. ¶ 6.)

Section 302(a)(1) permits courts to exercise specific jurisdiction over a non-domiciliary "who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1); *see also Chloé*, 616 F.3d at 169 (discussing section 302(a)(1)).  Section 302(a)(1) has two prongs: (1) the defendant must "have transacted business within the state," either itself or through an agent, and (2) the cause of action "must arise from that business activity."  *Licci IV*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)); *see also Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 574 (2d Cir. 2020) (quoting N.Y. C.P.L.R. § 302(a)(1)).  Under New York state law, a defendant's lack of physical presence in the state is not dispositive of whether he transacts business within the state, "so long as the defendant's activities [within the state] were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (quoting *Deustche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006)); *see also Licci ex. rel. Licci v. Lebanese Can. Bank, SAL (Licci II)*, 673 F.3d 50, 61 (2d Cir. 2012) ("A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'" (quoting *Fischbarg*, 9 N.Y.3d at 380)); *C. Mahendra (NY) LLC v. Nat'l Gold & Diamond Ctr., Inc.*, 3 N.Y.S.3d 27, 30 (App. Div. 2015) ("The statute applies where the defendant's New York activities were purposeful and substantially related to the claim.").  "'Purposeful' activities are 'those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Eades*, 799 F.3d at 168 (quoting

*Fischbarg*, 9 N.Y.3d at 380); *Chloé*, 616 F.3d at 169 ("[A] defendant need not be physically present in New York to transact business there . . . as long as he engages in '[p]urposeful activities' or 'volitional acts' through which he 'avails [him]self of the privilege of conducting activities within the . . . State, thus invoking the benefits and protections of its laws.'" (alterations in original) (quoting *Fischbarg*, 9 N.Y.3d at 380)).

In determining whether a defendant is purposefully transacting business in New York, a court must look at "the quality of the defendant['s] New York contacts." *Fischbarg*, 9 N.Y.3d at 381; *Best Van Lines, Inc.*, 490 F.3d at 246 ("Courts look to 'the totality of the defendant's activities within the forum' to determine whether a defendant has 'transact[ed] business' in such a way that it constitutes 'purposeful activity' satisfying the first part of the test." (alteration in original) (first quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Invs.*, 510 F.2d 870, 873 (2d Cir. 1975); and then citing *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457 (1965))); *see also Licci II*, 673 F.3d at 62 (noting that a single act or "an ongoing course of conduct or relationship in the state may" suffice to establish jurisdiction). "[M]ore limited contacts regarding services to be performed outside New York would not satisfy [section] 302(a)(1)." *Yih*, 815 F. App'x at 574 (citing *Fischbarg*, 9 N.Y.3d at 380).

To satisfy the "arising from" prong, a plaintiff must show that there is a "substantial relationship" or "articulable nexus" between the claim asserted and the actions taken in New York. *Best Van Lines, Inc.*, 490 F.3d at 246; *see also Licci ex rel. Licci v. Lebanese Can. Bank, SAL (Licci III)*, 20 N.Y.3d 327, 341 (2012) ("[W]here at least one element [of the cause of action pleaded] arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under [section 302(a)(1)].").

9

Plaintiff fails to state a prima facie case for personal jurisdiction over SLS under N.Y.

C.P.L.R. § 302(a)(1).  Plaintiff argues that SLS has significant suit-related contacts in New York.

(Pl.'s Opp'n 9.)  However, even when viewed in the light most favorable to her, her pleadings

and supporting materials do not plausibly allege sufficient contacts.  Plaintiff argues that "SLS

serviced a New York consumer's mortgage loan," "furnished inaccurate credit information

related to that loan," and "failed to properly respond to a dispute generated in, and sent from,

New York," (*id.*), but she has not pled, and it does not appear from the record, that SLS has a

branch or offices in New York, and Plaintiff maintains that "SLS's failure to correct the

erroneous reporting disputed by Plaintiff . . . was committed outside of New York," presumably

in Colorado where SLS is based, (*id.* at 10).  Rather, the only contact Plaintiff identifies with

New York is that she has "received communications from [SLS] concerning the loan-servicing

of the [l]oan" at her New York residence.  (Pl.'s Aff. ¶ 6.)  However, mail contacts do not

provide a basis for jurisdiction under N.Y. C.P.L.R. § 302(a)(1) unless the defendant "projected"

itself by those means into New York in such a way that it "purposefully availed [it]self . . . 'of

the benefits and protections of [New York's] laws.'"  *Parke-Bernet Galleries Inc. v. Franklyn*,

26 N.Y.2d 13, 19 (1970) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see, e.g.*, *id.* at

19 (finding that the defendant projected himself into a New York art auction by participating in

the bidding by telephone); *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apts.,*

*Ltd.*, 543 N.Y.S.2d 978, 981 (App. Div. 1989) (finding that the defendant had purposefully

transacted business in New York by participating in numerous conferences with the New York

attorney it had retained to represent its interests in a New York bankruptcy proceeding and

participating telephonically in settlement negotiations with the debtor); *see also Wilhelmshaven*

*Acquisition Corp. v. Asher*, 810 F. Supp. 108, 112 (S.D.N.Y. 1993) (noting that telephone and

10

mail contacts are generally insufficient to support jurisdiction under N.Y. C.P.L.R. § 301(a)(1) but distinguishing *Parke-Bernet Galleries, Inc.* and *Shreve City Apts., Ltd.*, where "the center of gravity of the business transacted was New York, and the defendants participated . . . in events taking place in New York"). Plaintiff has pled that SLS is registered to do business in New York, and she argues that "SLS serviced a New York consumer's mortgage loan." (Pl.'s Opp'n 9.) However, to the extent Plaintiff's opposition can be read as suggesting that, by mailing her, SLS purposefully availed itself of the benefits and protections of New York's mortgage loan servicing laws or engaged in loan servicing with respect to her loan pursuant to its New York registration, Plaintiff has not plausibly alleged this. As SLS argues, the property at issue is in Pennsylvania. (Def.'s Reply 3; Pl.'s Aff. ¶ 2.) Under the New York Banking Law, a mortgage loan servicer "engage[s] in the business of servicing mortgage loans" in New York when the "property [is] located in this state." N.Y. Banking Law § 590(1)(h) (defining "mortgage loan servicer" as "a person or entity registered . . . to engage in the business of servicing mortgage loans for property located in this state").[7] Therefore, while Plaintiff also alleges that SLS is registered to service loans in New York, that SLS serviced her loan, and that she is a New York consumer, these allegations do not support a finding that SLS purposefully transacted business in New York with respect to her loan pursuant to its New York registration by sending her loan-related communications. *See Lee v. Lending Tree*, No. 06-CV-827, 2006 WL 2927241, at *2 (S.D.N.Y. Sept. 29, 2006) (finding that "[t]he plaintiff has failed to show that [the defendant], by mailing mortgage loan documents related to a property in Virginia to the plaintiff in New York

---

[7] While the Court does not conflate the New York Banking Law's definition of "the business of servicing mortgage loans" with the "transacted business" prong of N.Y. C.P.L.R. § 302(a)(1), the Court understands SLS's assertion that Plaintiff's claim "arises out of SLS's business activity in Pennsylvania[,] where the Subject Property is located," as an invocation of the New York Banking Law. (Def.'s Reply 3.)

City, purposefully availed itself of the benefits and protection of New York's laws" where the

deed of trust to the property indicated it was "to be governed by federal law and the law of the

jurisdiction in which the property is located"); *cf. Eades*, 799 F.3d at 168 (finding mailing of

debt collection notice, engagement in debt collection telephone call, and mailing of summons

and complaint sufficient to establish purposeful availment in case arising under the Fair Debt

Collection Practices Act where the defendant "initiated its debt collection efforts in an active

(rather than responsive) attempt to collect money from two New York residents"); *Fischbarg*, 9

N.Y.3d at 382–83 (finding jurisdiction where out-of-state defendants retained a New York

attorney, "thereby project[ing] themselves into our state's legal services market," and thereafter,

"on their own volition, . . . continued their communications with [him], utilizing his services"

and thus invoking "the benefits and protections" of New York's laws relating to "the attorney-

client relationship" (citing *Parke-Bernet Galleries Inc.*, 26 N.Y.2d at 18)); *Parke-Bernet*

*Galleries Inc.*, 26 N.Y.2d at 18 (finding jurisdiction where the defendant participated in a live

auction in New York by means of an open telephone line, invoking the benefits and protections

of New York's auction laws).

      In addition, even if SLS transacted business in New York by sending Plaintiff loan-

related communications, Plaintiff's FCRA claim for failure to investigate and remove disputed

information does not appear to "arise from" SLS's mailings or any other purposeful activity in

New York; rather, as Plaintiff appears to acknowledge, it arises out of "SLS's failure to correct

the erroneous reporting disputed by Plaintiff . . . [which] was committed outside of New York."

(Pl.'s Opp'n 10); *Best Van Lines, Inc.*, 490 F.3d at 240 ("New York courts have held that a claim

'aris[es] from' a particular transaction when there is 'some articulable nexus between the

business transacted and the cause of action sued upon,' or when 'there is a substantial

relationship between the transaction and the claim asserted.'" (alteration in original) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006))); *see also Fisher v. O'Brien*, No. 09-CV-42, 2010 WL 1269793, at *6 (E.D.N.Y. Mar. 9, 2010) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." (alteration in original) (quoting *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005))); *Fischbach Corp. v. United Power Ass'n*, No. 93-CV-5373, 1995 WL 505582, at *2 (S.D.N.Y. Aug. 24, 1995) ("Courts repeatedly have found that a defendant has not 'projected himself' into New York for purposes of CPLR § 302(a)(1) . . . where the 'center of gravity' of the transaction was elsewhere.").

Finally, while Plaintiff cites *Minner* for the proposition that jurisdiction exists under N.Y. C.P.L.R. § 302(a)(1) "where the plaintiff's FCRA claim arose out [of] the furnisher's loan-servicing activity that occurred in New York," (Pl.'s Opp'n 9), *Minner* is inapposite, both because *Minner* involved the servicing of federal student loans rather than mortgage loans[8] and because the question in *Minner* was not whether the out-of-state furnisher had transacted business in New York but whether loan-servicing activity performed by the furnisher's wholly owned subsidiary was attributable to the furnisher for jurisdictional purposes. *Minner*, 2020 WL

---

[8] Unlike mortgage loans, the fact that a borrower resides in New York is relevant to whether an entity is engaged in the business of servicing student loans. N.Y. Banking Law § 711(1) ("[N]o person shall engage in the business of servicing student loans owed by one or more borrowers *residing in this state* without first being licensed . . . ." (emphasis added)). Therefore, in *Minner*, unlike the facts before the Court, it was at least arguable that any loan-servicing activity performed with respect to the plaintiff's loans — even if performed outside of New York state — was pursuant to the wholly owned subsidiary's New York license to service loans because the plaintiff resided in New York. *See* Amended Complaint ¶¶ 1–3, *Minner v. Navient Corp.*, No. 18-CV-1086, 2020 WL 906628, at *5 (W.D.N.Y. Feb. 25, 2020) (noting that the subsidiary was authorized to do business in New York and that the plaintiff resided in New York).

906628, at *5–6.  Therefore, Plaintiff has failed to state a prima facie case for personal

jurisdiction over SLS under N.Y. C.P.L.R. § 302(a)(1).

> ii.  **The Court lacks personal jurisdiction over SLS under section 302(a)(3)**

SLS argues that "Plaintiff cannot demonstrate specific jurisdiction under CPLR

§ 302(a)(3)" based only on the fact that she resides in New York, as this is an "'[in]sufficient

predicate for jurisdiction' under section 302(a)(3)."  (Def.'s Mem. 11 (quoting *Troma Ent. Inc.*,

729 F.3d at 218).)  Relying on *Henkin v. Gib. Private Bank & Tr. Co.*, No. 16-CV-5452, 2018

WL 557866, at *4 (E.D.N.Y. Jan. 22, 2018), SLS argues that the inquiry under this section

focuses "not on the actions or locale of the plaintiff[] but on the relationship among the

defendant, the forum[,] and the litigation," and the Complaint "contains no substantive

allegations that support a finding of SLS's contacts with this jurisdiction" nor any allegations to

satisfy the other elements of CPLR § 302(a)(3).  (*Id.*; *see also* Def.'s Reply 3–4.)

Plaintiff argues that specific jurisdiction exists under N.Y. C.P.L.R. § 302(a)(3) because

"SLS's FCRA violations constitute tortious activity in New York."  (Pl.'s Opp'n 10.)  In support,

Plaintiff argues that "SLS's failure to correct the erroneous reporting disputed by Plaintiff

constitutes a tortious act" that "was committed outside of New York[] and injured Plaintiff

within New York," that "SLS expected or should have expected to be sued in New York" given

the nature of its violation, and that "SLS derives substantial revenue from interstate commerce"

because it is "a loan servicer that directs its loan servicing activities into New York."  (*Id.*)

N.Y. C.P.L.R. § 302(a)(3) permits courts to exercise specific jurisdiction over a non-

domiciliary corporation that commits a tortious act outside of New York that causes harm to

someone in the state if either of two conditions are present.  *See Thackurdeen v. Duke Univ.*, 660

F. App'x 43, 46 (2d Cir. 2016); *Troma Ent., Inc.*, 729 F.3d at 218.  A court may exercise

14

personal jurisdiction over a corporation pursuant to subsection 302(a)(3) if the entity

"(i) regularly does or solicits business, or engages in any other persistent course of conduct, or

derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate or international commerce." *Thackurdeen*, 660 F. App'x at

46 (quoting N.Y. C.P.L.R. § 302(a)(3)(i)–(ii)); *Troma Ent.*, *Inc.*, 729 F.3d at 218 (same);

*Penguin Grp. (USA) Inc.*, 609 F.3d at 35–36 (discussing N.Y. C.P.L.R. § 302(a)(3)(ii)).

In order to successfully assert jurisdiction under section 302(a)(3)(ii), a plaintiff must

establish that:

> (1) the defendant's tortious act was committed outside New York,
> (2) the cause of action arose from that act, (3) the tortious act caused
> an injury to a person or property in New York, (4) the defendant
> expected or should reasonably have expected that his or her action
> would have consequences in New York, and (5) the defendant
> derives substantial revenue from interstate or international
> commerce.

*Penguin Grp. (USA) Inc.*, 609 F.3d at 35.  In determining the third element, where the injury was

caused, courts apply a "situs-of-injury test," which requires the court "to locate the original event

which caused the injury.'" *Thackurdeen*, 660 F. App'x at 46 (quoting *Whitaker v. Am.*

*Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)); *see also United Mobile Techs., LLC v.*

*Pegaso PCS, S.A. de C.V.*, 509 F. App'x 48, 50 (2d Cir. 2013) (same).  The situs of the injury for

the purpose of section 302(a)(3)(ii) "is the location of the original event which caused the injury,

not the location where the resultant damages are felt by the plaintiff." *Timothy Coffey Landscape*

*Inc. v. Soave*, 760 F. App'x 58, 61 (2d Cir. 2019) (quoting *Whitaker*, 261 F.3d at 209).

Moreover, "[i]t is well-settled that 'residence or domicile of the injured party within [New York]

is not a sufficient predicate for jurisdiction' under section 302(a)(3)." *Troma Ent., Inc.*, 729 F.3d

at 218 (alteration in original) (quoting *Fantis Foods, Inc. v. Standard Importing Co.*, 425

15

N.Y.S.2d 783 (1980)).  "Therefore, '[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York.'"  *Timothy Coffee Landscape Inc.*, 760 F. App'x at 61 (alteration in original) (quoting *Whitaker*, 261 F.3d at 209) (citing *Troma Ent., Inc.*, 729 F.3d at 218); *Deutsche Bank AG v. Vik*, 81 N.Y.S.3d 18, 20 (App. Div. 2018) ("That [a] plaintiff felt economic injury in New York, alone, is an insufficient basis to confer jurisdiction.").

Plaintiff fails to state a prima facie case for personal jurisdiction over SLS under N.Y. C.P.L.R. § 302(a)(3).  As SLS argues, the only connection between SLS's allegedly tortious act and New York is Plaintiff's residence in the state.  However, this "'is not a sufficient predicate for jurisdiction' under section 302(a)(3)."  *Troma Ent., Inc.*, 729 F.3d at 218.  In addition, the only court that has considered whether jurisdiction could be exercised under section 302(a)(3) over an out-of-state furnisher in an FCRA case based on the furnisher's continued reporting of disputed information with respect to a New York resident's mortgage loan found that "the mere facts of [the plaintiff's] presence[9] in New York and the alleged harm he suffered . . . are insufficient to subject [the furnisher] to jurisdiction" because suffering economic harm in New York is insufficient to establish a "direct" injury under section 302(a)(3).  *See Henkin*, 2018 WL 557866, at *4 (finding no jurisdiction under section 302(a)(3)(ii) where Florida-based furnisher with New York branch had done nothing in New York in connection with the alleged tort, making the plaintiff's presence and the economic harm he suffered in New York the only

_____

[9] Plaintiff argues that *Henkin* is inapposite because the lack of personal jurisdiction "was premised solely on the plaintiff's fortuitous presence in the state."  (Pl.'s Opp'n 11 n.7.) Although the court used the word "presence" in explaining its reasoning, the plaintiff in *Henkin* resided in New York.  *See Henkin v. Gib. Private Bank & Tr. Co.*, No. 16-CV-5452, 2018 WL 557866, at *1 (E.D.N.Y. Jan. 22, 2018).

connection between the allegedly tortious actions and the state); *Penguin Grp. (USA) Inc.*, 609

F.3d at 38 ("[It is] settled New York law that the suffering of economic damages in New York is

insufficient, alone, to establish a 'direct' injury in New York for N.Y. C.P.L.R. § 302(a)(3)

purposes."); *Whitaker*, 261 F.3d at 209 ("The occurrence of financial consequences in New York

due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction

under § 302(a)(3) where the underlying events took place outside New York." (quoting *United*

*Bank of Kuwait v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991)));

*NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 403 (S.D.N.Y. 2009) (finding

that "[s]ection 302(a)(3) cannot serve as a basis for jurisdiction, even if [the plaintiffs] suffered

financial harm in New York," where the events giving rise to the injury occurred outside of New

York).  Accordingly, Plaintiff has failed to state a prima facie case for personal jurisdiction under

N.Y. C.P.L.R. § 302(a)(3).[10]  *See id.*; *see also Fisher*, 2010 WL 1269793, at *7 (finding

---

[10]  Plaintiff argues that "courts around the country have rejected similar challenges to personal jurisdiction" in FCRA cases.  (Pl.'s Opp'n 10.)  In support, Plaintiff cites a line of cases in which courts applying the "effects test" relied on by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), have found specific jurisdiction over out-of-state furnishers where the furnisher intentionally continued to report disputed information with the knowledge that its reporting was injuring the plaintiff in the forum state.  (*Id.* at 10–11); *see Brewer v. Transunion, L.L.C.*, 453 F. Supp. 2d 1346, 1350 (S.D. Ala. 2006) ("The so-called 'effects test' adopted by the court provides that intentional and allegedly tortious actions which the actor knows will be felt in another state are sufficient to justify the exercise of personal jurisdiction in an action arising out of those acts." (citing *Calder*, 465 U.S. at 789–90)); *see also, e.g.*, *Mitchell v. Bancfirst*, No. 17-CV-2036, 2018 WL 338217, at *4 (D. Kan. Jan. 9, 2018) ("Plaintiff directly contacted [the] defendant after multiple attempts to correct the alleged inaccurate information on his credit report.  He claims [the] defendant responded to his inquiry in a letter sent to his Kansas address. . . . [The defendant] expressly aimed its activity at Kansas by contacting [the] plaintiff in Kansas regarding the inaccuracies, while still failing to correct the misinformation which, therefore, caused injury to [the] plaintiff in Kansas.  By knowing that it was injuring [the] plaintiff in Kansas, [the] defendant could have reasonably anticipated being [haled] into court here.").  Although N.Y. C.P.L.R. § 302(a)(3) "is roughly analogous to the 'effects test' in *Calder*," *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 254 n.14 (2d Cir. 2007), these cases do not support Plaintiff's argument under this section for the reasons described above.

monetary damages suffered in New York as a result of liens placed on the plaintiff's horses in Ohio insufficient to constitute injury); *Lipin v. Bergquist*, 574 F. Supp. 2d 423, 432 (S.D.N.Y. 2008) (finding the plaintiff's residence in New York and "'experience' of economic and/or emotional injury in this state" insufficient to constitute injury).

Because Plaintiff's allegations and supporting materials fail to demonstrate that the Court has specific jurisdiction over SLS, the Court grants SLS's motion to dismiss the Complaint for lack of personal jurisdiction.[11]

### iii.   The Court denies Plaintiff's request for limited jurisdictional discovery but grants leave to amend

Plaintiff requests leave to conduct "limited jurisdictional discovery into SLS's suit-related contacts with New York State, including the extent of SLS's loan-servicing credit reporting activities in New York relating to Plaintiff's dispute, [and] any correspondence with Plaintiff," arguing that "[s]uch jurisdictional discovery is likely to produce evidence of SLS's proactive attempts at servicing the [l]oan by way of communicating to Plaintiff while Plaintiff lived in New York." (Pl.'s Opp'n 13.) In support, Plaintiff asserts that such discovery is necessary "to avoid undue prejudice." (*Id.* at 11.) Plaintiff also requests leave to amend "[i]f . . . the Court finds the Complaint lacking in any way." (*Id.* at 13.)

SLS argues that "Plaintiff has failed to make even a 'sufficient start' to demonstrate jurisdiction over SLS and is therefore not entitled to jurisdictional discovery." (Def.'s Reply 6.) In support, SLS argues that Plaintiff "has a problem of kind, not degree — she needs new jurisdictional theories, not more evidence substantiating the theories she has already advanced. Even the best evidence she could get in further discovery . . . would make no difference in the

---

[11]  Because the Court dismisses the Complaint for lack of personal jurisdiction, the Court does not consider the parties' arguments as to Defendant's motions, in the alternative, to dismiss the Complaint for improper venue or failure to state a claim.

jurisdictional outcome for the reasons already discussed." (*Id.* (quoting *Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 205 (E.D.N.Y. 2014)).) SLS does not address Plaintiff's request for leave to amend in its briefing. (*See generally id.*)

 "A district court has 'considerable procedural leeway' when deciding a motion to dismiss for lack of personal jurisdiction and 'may permit discovery in aid of the motion.'" *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). "[The] court should take care to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *Phoenix Consulting v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)). The bar for granting "jurisdictional discovery" is "low," *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 (2d Cir. 2014), and it is appropriately granted where a plaintiff's allegations make a "sufficient start" toward establishing personal jurisdiction, *Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005). However, "if the plaintiff has failed to establish a *prima facie* case for personal jurisdiction, jurisdictional discovery is generally not granted." *RSM Prod. Corp. v. Fridman*, 643 F. Supp 2d 382, 402 (S.D.N.Y. 2009) (first citing *Jazini*, 148 F.3d at 186; and then citing *Langenberg v. Sofair*, No. 03-CV-8339, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (collecting cases)), *aff'd*, 387 F. App'x 72 (2d Cir. 2010). "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction." *Daventree Ltd. v. Republic of Aser.*, 349 F. Supp. 2d 736, 760 (S.D.N.Y. 2004) (quoting *Tex. Int'l Magnetics, Inc. v. Auriga-Aurex, Inc. (In re Magnetic Audiotape Antitrust Litig.)*, 334 F.3d 204, 207–08 (2d Cir. 2003) (per curiam)). "However, a court is not obligated to subject a foreign corporation to discovery where

the allegations of jurisdictional facts . . . fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction," *id.* (first citing *Jazini*, 148 F.3d at 185–86; and then citing *APWU*, 343 F.3d at 627), and "[d]iscovery need not be granted to permit a fishing expedition for jurisdictional facts," *Greer v. Carlson*, No. 20-CV-5484, 2020 WL 6064167, at *5 (S.D.N.Y. Oct. 14, 2020) (citing *RSM Prod. Corp.*, 643 F. Supp. 2d at 402).

Plaintiff has failed to state a prima facie case for personal jurisdiction over SLS and has not identified an issue of jurisdictional fact to warrant discovery.  As discussed above, Plaintiff's arguments under N.Y. C.P.L.R. § 302(a)(1) fail because they are solely premised on loan-related communications that Plaintiff received at her New York residence and because, based on her allegations, her claim does not arise from any mail sent to New York or any other purposeful activities of SLS in New York.  Despite this, Plaintiff seeks jurisdictional discovery to produce more of the same evidence, which she should already have — that is, "evidence of SLS's proactive attempts at servicing the [l]oan by way of communicating to Plaintiff while Plaintiff lived in New York."  (Pl.'s Opp'n 11); *cf. Uebler*, 363 F. Supp. 2d at 506 (noting that allowing jurisdictional "discovery in this case is bolstered by the fact that the facts necessary to establish personal jurisdiction lie within [the defendant's] exclusive knowledge").  Nor would this discovery help Plaintiff state a prima facie case for jurisdiction under N.Y. C.P.L.R. 302(a)(3), given that her residence in New York cannot serve as the predicate for jurisdiction under this section and the financial damages she suffered are insufficient to establish a direct injury under this section.  However, because Plaintiff has indicated that she may be able to allege "additional details about key events leading up to the lawsuit, all of which occurred in New York," the Court

grants Plaintiff leave to file an amended complaint within sixty days.  (Pl.'s Reply in Opp'n to Def.'s Mot. for Pre-motion Conference, Docket Entry No. 25.)

**III.   Conclusion**

For the reasons stated above, the Court grants SLS's motion and dismisses the Complaint against SLS for lack of personal jurisdiction pursuant to Rule 12(b)(2).  In addition, the Court grants Plaintiff sixty days to file an amended complaint.

Dated:  February 23, 2021
        Brooklyn, New York

                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge